IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| IN RE THE MATTER OF | ) | Case No. 04-23118-DRD-7 |
| KYLE DAVID EMMONS, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| KYLE DAVID EMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 05-2056-DRD |
| | ) | |
| v. | ) | |
| | ) | |
| KIM MELINDA EMMONS | ) | |
| (N/k/a KIM MELINDA WEBB) | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Before the Court is a Motion for Civil Contempt and Sanctions filed by Kyle David Emmons

("Debtor") and a Motion to Set Aside Default Judgment filed by Kim Melinda Emmons n/k/a Kim

Melinda Webb ("Webb").  The Court heard evidence and arguments on the above referenced matters

on March 16, 2006, solicited post-hearing briefs and took the matters under advisement.  These are

core proceedings under 28 U.S.C. §157(b)(2)(A) over which the Court has jurisdiction pursuant to

28 U.S.C. §§ 1334(b), 157(a) and (b)(1).   The following constitutes my Findings of Fact and

Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made

applicable to these proceedings by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy

Procedure.  For the reasons set forth below, the Court denies Debtor's Motion for Civil Contempt

and Sanctions and grants Webb's Motion to Set Aside Default Judgment.

## I.  FACTUAL AND PROCEDURAL HISTORY

Debtor and Webb obtained a Judgment and Decree of Dissolution of Marriage from the

Circuit Court of Boone County, Missouri on or about May 19, 1999 ("Dissolution Judgment").

Pursuant to the Dissolution Judgment, Debtor was ordered to pay certain costs associated with

their children's college education.  On December 22, 2004, Debtor filed a Chapter 13

bankruptcy, which was subsequently converted to a Chapter 7.  Webb is listed as a creditor on

Schedule E.   On June 30, 2005, Webb filed, in the Circuit Court of Boone County, Missouri, in

Case No. 99DR081106, a Motion for Contempt and Application for Suspension of License

("State Court Contempt Motion") for alleged non-payment of child support.   In response to this,

Debtor filed, on July 21, 2005, adversarial complaint no. 05-2052 ("Adversary 05-2052"),

seeking damages for an alleged violation of the automatic stay.  Five days later, on July 26,

2005, Debtor filed a second complaint, adversary no. 05-2056 ("Adversary 05-2056"), seeking a

determination of dischargeability of their son's spring 2005 college tuition and both their

children's future college expenses.

On July 29, 2005, Webb filed a Motion for Relief from Stay to proceed with the State

Court Contempt Motion, which was partially granted by the Court on September 8, 2005

("Partial Relief Order").   The Partial Relief Order contains the following language:

> Upon hearing had, and information received, the Court hereby lifts the stay to allow State
> Court proceedings in case number 99DR081106, filed in Boone County Circuit Court,
> during the pendency of the above-captioned bankruptcy with regard to post-petition child
> support.  Prepetition child support in the amount of $2,346.00 is being paid through the
> plan and the stay is not lifted with regard to that amount.  To date $340.73 has been paid
> on that claim through the plan.

On September 26, 2005, the Court entered an order converting Debtor's case to a Chapter 7.  At

2

Debtor's request, because Webb had not responded, on September 30, 2005, the Court entered an

Order of Default Judgment in Adversary 05-2056 ("Default Judgment").  The Default Judgment

states in relevant part:

> . . . judgment should be entered against the Defendant because (1) there is no debt owed
> by the Plaintiff arising from Plaintiff's son's attendance at Harding University for the
> Spring semester, 2005; and (2) the Plaintiff's obligation for future college costs pursuant
> to a Judgment of Dissolution between Plaintiff and Defendant Kim Melinda  Emmons. . .
> is not in the nature of support under 11 U.S.C. § 523(a)(5).

A telephone conference was held on the State Court Contempt Motion on November 17,

2005 and the Family Court Commissioner determined that the parties could proceed on the issue

of college tuition, pursuant to the language contained in the Partial Relief Order.  Neither at this

hearing nor at any other time until approximately two weeks after the entry of an order of

discharge did Debtor make the state court aware of the entry of the Default Judgment.  On

November 18, 2005, Webb amended the State Court Contempt Motion ("Amended State Court

Contempt Motion"), abandoning a request for payment of the prepetition child support arrearage

and the 2005 Spring tuition[1], but seeking payment for 2005 Fall college tuition.  A hearing was

held on the Amended State Court Contempt Motion on November 22, 2005 and the Family Court

Commissioner found that Debtor had not paid the college tuition and was therefore in contempt

of the Dissolution Judgment.  On November 30, 2005, because the 2006 Spring tuition had come

due, Webb filed another Motion for Contempt ("Third Motion for Contempt") in the state court

seeking to hold Debtor in contempt for non-payment of post-petition child support and Spring

---

[1] Webb abandoned her request for 2005 Spring college tuition because it had been paid
by Debtor's father, thus was no longer a debt due and owing to her pursuant to the Dissolution
Judgment and the remaining prepetition child support arrearage had been paid by Debtor.

3

2006 tuition.  On January 9, 2006, the state court scheduled a show cause hearing for the Third

Motion for Contempt for January 24, 2006.  This Court entered an Order of Discharge in

Debtor's bankruptcy on January 10, 2006 ("Order of Discharge").  On January 17, 2006, Debtor

filed, in state court, a Motion to Dismiss or Vacate, Motion to Dismiss for Bankruptcy

Discharge, Motion for Rehearing with the State Court and Notice of Hearing scheduled for

January 24, 2006.  A hearing was held in state court on January 24, 2006, where Debtor prayed

for a dismissal because of the bankruptcy discharge and Webb argued it was proper to proceed

on the Third Motion for Contempt.  The Family Court Commissioner made no findings at the

January 24th hearing and continued both matters for clarification from this Court.  There have

been no hearings on the Third Motion for Contempt since the Order of Discharge was entered

and there have been no further hearings on this matter in the state court since January 24, 2006.


## II.  DISCUSSION AND ANALYSIS

### A. Motion to Set Aside Default Judgment

The entry of default judgment is not favored by the law and "should be a rare judicial

act."  *Iowa Oil Co. v. T Mart Inc*., 299 B.R. 555, 562 (Bankr. N.D. Iowa 2003) *citing Jones Truck

Lines, Inc. v. Foster's Truck & Equip. Sales (In re Jones Truck Lines, Inc*.), 63 F.3d 685, 688 (8th

Cir.1995).  The courts have a preference for the adjudication of cases on their merits.  *T. Mart

Inc.*, 299 B.R. at 562, *citing Johnston v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir.

1998).  Decisions to grant or deny a motion to set aside default judgment are within the sound

discretion of the bankruptcy court. *Jones Truck Lines, Inc.*, 63 F.3d at 687, *citing United States

ex rel. Time Equip. Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir.1993)*.*  Bankruptcy

Rule 7055 incorporates Rule 55 of the Federal Rules of Civil Procedure.  Rule 55 sets out the

procedures for entry of default and judgment of default and states: "For good cause shown the

court may set aside an entry of default and, if a judgment by default has been entered, may

likewise set it aside in accordance with Rule 60(b)."  Reasons listed in Rule 60(b)(1) for relief

from judgment, and made applicable to default judgments through Rule 55( c), include "mistake,

inadvertence, surprise, or excusable neglect."[2]  *T. Mart Inc.*, 299 B.R. at 560, *citing Harre*, 983

F.2d at 130; Fed.R.Civ.P. 60(b)(1).  Alternatively, Rule 60(b)(4) permits the court to set aside a

judgment that is "void."  *T. Mart Inc.*, 299 B.R. at 560.  If a defendant is improperly served, a

federal court lacks jurisdiction over the defendant rendering a default judgment void under Rule

60(b)(4).  *T. Mart Inc.*, 299 B.R. at 560, *citing Printed Media Servs., Inc. v. Solna Web, Inc.*, 11

F.3d 838, 843 (8th Cir.1993).  Webb, as the defaulting party, has the burden to show the

applicability of Rule 60(b)(1) or (b)(4).  *See T. Mart Inc.*, 299 B.R. at 560.

### 1. Service of Summons and Complaint, Rule 60(b)(4)

Debtor asserts that he served the Summons and Complaint for Adversary 05-2056 on

Webb by first class mail to her address of 3307 Shoemaker Drive, Columbia, MO 65202 on July

28, 2005.  Webb argued that she "either did not receive a copy of the Adversarial Complaint No.

05-2056 or did not realize that debtor had filed another Adversary Complaint against her within

---

[2]In her Motion to Set Aside Default Judgment, Webb cites 28 U.S.C. § 1655.  Debtor asks that this Court dismiss the motion for failure to state a claim on the ground that the cited section refers to inadequate notice in certain lien enforcement proceedings and is inapplicable to this case.  The Court declines to do so.  The evidence adduced at the hearing and the arguments set forth in the post-hearing briefs clearly set forth the legal and factual basis upon which Webb seeks to set aside the default judgment and invoke Rule 60(b).  The Court considers the issue tried by consent and Debtor has failed to indicate that he has been or would be prejudiced in any way as a result of the Court's consideration of Rule 60(b) as the true basis for Webb's motion.

5

a week of the prior complaint."[3]   It is well settled that the law presumes that correspondence properly addressed, stamped and mailed was received by the individual to whom it was addressed.  *Arkansas Motor Coaches Ltd. Inc. v. Comm'r. of Internal Revenue*, 198 F.2d 189, 191 (8th Cir.1952); *T. Mart Inc.*, 299 B.R. at 560.  Although the presumption of delivery is rebuttable, it is a strong presumption that may only be overcome by specific facts.  *Arkansas*, 198 F.2d at 191.

Here, because Debtor invoked the presumption of proper delivery of service, the law requires that Webb present something more than mere testimony on non-receipt.  *T. Mart Inc.*, 299 B.R. at 560.  Webb testified that she still lives at the address that Debtor used, that she has lived there for approximately three years and that she has not had problems receiving mail in the past.  Webb testified that she read all court documents mailed to her residence and, because she did not always understand what they stated, that she gave a copy of everything she received to her attorney.  Her argument is that because she did not give a copy of the complaint in Adversary 05-2056 to her counsel, she must not have received one in the mail.  She also stated that she did not initially receive notice of Debtor's bankruptcy, implying that Debtor may have also forgotten to send her a copy of Adversary 05-2056.  That fact, however, is irrelevant to the question of whether she received a copy of the Complaint and Summons for Adversary 05-2056.  The issue here is whether she was served in Adversary 05-2056 by Debtor mailing her a copy, not whether she was listed as a creditor on the mailing matrix and received notices to creditors from the bankruptcy court in the underlying case.  Because Webb presented no specific facts upon which the Court can determine that she did not receive the Complaint and Summons for Adversary 05-

---

[3] See Motion to Set Aside Default Judgment, ¶ 9.

2056, the Court must presume that Webb was properly served in that adversary action and thus she is not entitled to relief from the Default Judgment pursuant to Rule 60(b)(4).

### 2. Excusable Neglect, Rule 60(b)(1)

Under Rule 60(b)(1), the court may grant relief from a default judgment because of "mistake, inadvertence, surprise or excusable neglect." *T. Mart Inc.*, 299 B.R. at 561, *citing Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 394 (1993). The term "excusable neglect" in this rule "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer,* 507 U.S. at 394. The court should not focus narrowly on the negligent act that caused the default. *T. Mart Inc.*, 299 B.R. at 561, *citing Murray v. S.O.L.O. Benefit Fund*, 172 F.Supp.2d 1134, 1141 (N.D.Iowa 2001). The inquiry is an equitable one, where the court is required to engage in the balancing of numerous considerations. *T. Mart Inc.*, 299 B.R. at 562, *citing Union Pacific R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 782 (8th Cir.2001). The equitable factors that a court must weigh when determining whether neglect is excusable include: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *In re Payless Cashways, Inc.*, 230 B.R. 120, 138 (8th Cir. BAP 1999) (citations omitted), *aff'd* 203 F.3d 1081 (8th Cir.2000), *citing Pioneer,* 507 U.S. at 395. Whether the defaulting party has a meritorious defense is also a relevant factor. *T. Mart Inc.,* 299 B.R. at 561, *citing Union Pacific* R. Co., 256 F.3d at 783; *Johnson,* 140 F.3d at 783.

"Where the defaulting party's negligence involves only a minor mistake, the other equitable considerations are entitled to significant weight in determining whether relief under

Rule 60(b)(1) should be granted*.*" *T. Mart Inc*., 299 B.R. at 562, *citing Union Pacific R. Co.*,

256 F.3d at 783.   The Eighth Circuit distinguishes between careless conduct by a defaulting

party and contumaciousness or intentional flouting or disregard of the court and its procedures.

*Johnson*, 140 F.3d at 784.  The Eighth Circuit has often granted Rule 60(b) relief for "marginal

failures when there were meritorious defenses and an absence of prejudice." *See Johnson*, 140

F.3d at 784; *Jones Truck Lines Inc.,* 63 F.3d at 687-88 (thirty-two day delay caused by a

mistake; default judgment reversed); *Harre*, 983 F.2d at 130 (distinguishing between a marginal

failure to comply with time requirements and willful violations of court rules); *Hoover v. Valley

West D M*, 823 F.2d 227, 230 (8th Cir.1987).

Webb argues that her motion to vacate the Default Judgment should be granted under the

excusable neglect standard.  While Webb maintains that she did not receive the Complaint or

Summons for Adversary 05-2056, she states that if she did, she either lost or ignored it.  She

testified that because the issues raised in Adversary 05-2056 were identical to the ones she was

fighting in the state court contempt actions, that it would have been a red flag to her, that she

would have asked her attorney to handle it and that she would not have simply ignored it.   She

and Sleeth testified that throughout the case, Debtor filed a "litany of documents" with each

pleading, which Webb admitted caused her some confusion.

Debtor argues that there were too many references to Adversary 05-2056 in various

notices and pleadings for Webb to establish excusable neglect.  Debtor asserts that Adversary

05-2056 was referenced in the following ways: (1) in an ECF notice sent to Noel Magee

(Webb's former counsel) on July 26, 2005; (2) in Debtor's Objection to Creditor Kim Melinda

Webb's Motion to Lift Stay filed on July 29, 2005; (3) in docket entry # 74 in the main

8

bankruptcy case docket; (4) five certificates of service related to Adversary 05-2056; (5) in an

ECF notice to Webb's counsel regarding the closing of Adversary 05-2056; (6) through alleged

discussions with Brian Sleeth, Webb's domestic attorney, at a state court hearing; and (7)

through alleged conversations wherein Debtor asserts that Adversary 05-2056 was discussed.

### a. Application of the Pioneer Factors

### i. Prejudice to Debtor

Debtor argues that he would "suffer severe prejudice" if the Default Judgment is vacated

as he would then be subject to the state court contempt proceedings where he could be found in

contempt for not paying his son's college tuition for Fall 2005 and Spring 2006.  Prejudice is not

established, however, merely from the fact that the defaulting party will be permitted to defend

on the merits.  *T. Mart Inc.*, 299 B.R. at 562; *Johnson*, 140 F.3d at 785.  "Setting aside a default

must prejudice plaintiff in a more concrete way, such as loss of evidence, increased difficulties

in discovery, or greater opportunities for fraud and collusion."  *Id., citing Berthelsen v. Kane*,

907 F.2d 617, 621 (6th Cir.1990).

Debtor either will not suffer significant prejudice from vacating the Default Judgment or

any potential prejudice can be alleviated by this Court.  First, Debtor has requested and received

a re-hearing de novo on the Amended State Court Motion for Contempt and there are no pending

hearings scheduled on the Third Motion for Contempt; thus, no immediate threat of litigation or

sanctions for contempt against Debtor exists.  Second, the Court will condition the relief from

the Default Judgment with an injunction against any further state court proceedings on the issue

of college tuition costs until a determination has been made by this Court on the complaint.  The

court has discretion to impose such conditions as it deems fit, and the defaulting party has the

choice of either complying with the conditions or allowing the judgment to stand.  *T. Mart Inc.*,

299 B.R. at 562.

Debtor contends that he had "a fighting chance" of paying the college tuition costs for

Fall 2005 when the adversary proceeding was commenced, but has no means to pay the

additional amounts which may have accrued since then.  This rather conclusory testimony does

not establish prejudice.  The Debtor does not testify that he had some financing commitment or

other available resource which he abandoned or lost or which is otherwise no longer available to

him, as a result of relying upon the entry of the Default Judgment.

### ii. Length of and Reason for Delay and Impact on Judicial Proceedings

Debtor argues that the length of time between the entry of the Default Judgment and

Webb's motion to vacate the same, approximately five months, is unreasonable, and that the

motion is therefore untimely pursuant to Rule 60(b).  This rule requires that a motion to vacate

be ". . . made within a reasonable time . . . not more than one year after the judgment . . . was

entered. . . ."  Fed. R. Civ. P. 60(b).  What constitutes a "reasonable time" requires an individual

determination.  *In re  Johnson*, 13 B.R. 342, 348 (Bankr.D.Minn.1981).  "A reasonable time is

before irrevocable acts have occurred."  *Id*.   Webb testified that she did not become aware of the

Default Judgment until January 23, 2006, when Debtor specifically referred to it in his Answer

to the Third Motion for Contempt, Motion for Summary Judgment, Motion to Vacate and

Motion to Dismiss for Bankruptcy Discharge and Motion for Rehearing, filed in state court.

Therefore, she did not in fact wait five months to move to vacate the judgment, but rather,  her

filing of the  Motion to Vacate Default Judgment on February 28, 2006, was actually only about

a month later. Considering the unique circumstances of this case, and the fact that Rule 60(b)(1)

allows for motions to vacate to be filed up to a year after the default judgment is entered, the

Court finds that Webb's Motion to Vacate was filed within a reasonable time.

Furthermore, the Court is unwilling to assign to Webb all of the responsibility for a delay

in moving to vacate, and any resultant impact on judicial proceedings, when Debtor intentionally

failed to apprise Webb, or the state court, of its existence.  Debtor's decision to pocket the

Default Judgment was a key factor in determining when Webb became aware of it and he is thus,

at the very least, equally responsible for the delay in her filing the motion to vacate the Default

Judgment.

Debtor cites no significant impact on the proceedings before this Court which will occur

as a result of vacating the Default Judgment.  For example, vacating that judgment will have no

impact on the underlying bankruptcy case.  The only impact on the adversary proceeding will be

to delay the initiation of the process of pleading, discovery and other pretrial proceedings

necessary to prepare this case for resolution.

### iii. Good Faith of Webb

Debtor argues that Webb's failure to become aware of Adversary 05-2056, despite the

numerous references to it in pleadings filed and the notices sent to her previous and current

counsel, is evidence of bad faith.  The Court disagrees.   The ECF notice of Adversary 05-2056

was sent to Noel Magee the day before the Court entered an order allowing him to withdraw

from the case.  She had requested that he withdraw on June 8, 2005 and a motion seeking leave

to do so was filed on July 5, 2005.  Webb testified that Mr. Magee did not forward notice of

Adversary 05-2056 to her, which is believable considering she requested that he withdraw

because she was not confident that she was receiving adequate communication from him.   She

-11-

also testified that she overlooked the references to Adversary 05-2056 in the other pleadings because she mistakenly thought the pleadings were referencing Adversary 05-2052, the first adversary action filed in this case, less than a week before Adversary 05-2056. Considering the fact that Adversary 05-2056 seeks a determination about the exact issues that were being litigated in the state court, its reasonable to believe Webb would not have intentionally disregarded it.   Additionally, because Webb did not know about Adversary 05-2056, she did not hire counsel to represent her in that action, thus the references to Adversary 05-2056 in the pleadings and the docket in the main bankruptcy case and the certificates of service and ECF notice sent to Webb's counsel in the adversary case, are irrelevant to the question of whether her counsel knew about it because they were not representing her in that adversary.

Debtor testified that prior to the first hearing scheduled on the State Court Contempt Motion on August 16, 2005, he had a private conference with Sleeth in which Sleeth allegedly acknowledged the existence of Adversary 05-2056 and contended that the Bankruptcy Court lacked jurisdiction over the complaint. The Court finds this assertion inconsistent both with the testimony offered by Webb and Sleeth, as well as Debtor's behavior in the state court contempt action. Webb testified credibly that she did not understand that Adversary 05-2056 had been filed against her or that a Default Judgment had been obtained until sometime in late January 2006. The Court finds it difficult to believe that if Sleeth was aware of the existence of the adversary in August 2005, that he would not have discussed that with his client. In addition, Sleeth's subsequent testimony about such discussions indicates that he was also unaware of the existence of the adversary. Sleeth testified that at no time did Ms. Webb bring to him a copy of the complaint in Adversary 05-2056, nor did he receive one from Mr. Magee. The Court does

not believe that Sleeth would have so testified if he had been aware of the adversary proceeding

in August 2005.  Finally, Debtor's own subsequent conduct in the state court contempt action

belies this assertion.  As noted, Debtor did not advise the state court of the existence of

Adversary 05-2056 or the entry of Default Judgment until late January 2006.  It seems unlikely

to the Court that Debtor would have discussed this issue with Sleeth in advance of the August,

2005 hearing if it was not one he thought important enough to raise with the state court.

Debtor's additional argument that, on February 15, 2005, Sleeth told the state court judge

that ". . . [Webb] did not respond to this case because child support is not dischargeable under

the old law or the new law and so we didn't think we had a dog in that fight" is problematic for

two reasons.  First, the date is obviously incorrect considering that the State Court Contempt

Motion was not even filed until June 30, 2005.  Second, even if the date is simply a

typographical error, the Court finds no evidence in the record to support a finding that Sleeth

made such a statement.

### iv. Meritorious Defense

When considering whether to provide relief from a judgment, the court is not required to

conduct a mini-trial to determine the validity of a party's defenses.  Rather, the question is

whether the proffered evidence would permit a finding for the defendant.  *See T. Mart. Inc*, 299

B.R. at 563, *citing Johnson*, 140 F.3d at 785.  Here, Webb's defense to Debtor's Complaint is

that college tuition is child support and thus non-dischargeable in bankruptcy pursuant to 11

U.S.C. § 523(a)(5).  There is little question that this type of defense can be successful.  Webb

points out that the provision requiring Debtor to pay the college tuition costs is in that portion of

the Dissolution Judgment regarding child support.  The location of the award in the agreement or

judgment has been used by the courts as one factor in determining the intent of the parties or the

Court as to the function of the award and whether it is therefore properly considered support.

*See Leppaluoto v. Combs (In re Combs)*, 101 B.R. 609, 615 (9th Cir. BAP 1989); *Morgan v.

Woods (In re Woods)*, 309 B.R. 22, 28 (Bankr. W.D.Mo.2004); *Rice v. Rice (In re Rice)*, 94 B.R.

617, 618 (Bankr.W.D.Mo.1988).  In addition, that a court might consider a  college tuition

payment obligation as child support is evidenced by the fact that the Family Court Commissioner

reached that conclusion in construing the language of this Court's Partial Relief Order and in

determining that the contempt action could proceed under that order as the request related to

child support.

In summary, because default judgments are not favored by law, and after taking into

consideration all the relevant circumstances, the Court concludes that Webb's Motion to Vacate

Default Judgment should be granted under Rule 60(b)(1) for excusable neglect.  Her failure to

answer or otherwise defend the complaint in Adversary 05-2056 may have been careless or

negligent, but does not rise to the level of "contumacious" conduct or willful disregard of this

Court's procedures.  After considering the factors set forth in *Pioneer*, the Court finds Webb has

met her burden to prove excusable neglect.

### B. Motion for Civil Contempt and Sanctions

### 1. Violation of the Automatic Stay

Debtor argues that Webb acted on multiple occasions to violate the automatic stay

provision set forth in 11 U.S.C. § 362.  Section 362(a)(1) states in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301,
302, or 303 of this title . . . operates as a stay, applicable to all entities, of-

(1) the commencement or continuation, including the issuance or employment of

process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).  A bankruptcy court may award damages to an individual debtor for a

willful violation of the automatic stay.  11 U.S.C. § 362(h).

Debtor asserts that Webb first violated the automatic stay by filing the State Court

Contempt Action on June 30, 2005.  Debtor acknowledges that the Court entered the Partial

Relief Order on September 8, 2005, which lifted the stay as to post-petition child support, but

argues that Webb continued to violate the stay by pursuing college tuition as child support after

the Default Judgment was entered on September 30, 2005.  Webb amended the State Court

Contempt Motion to comply with the Partial Relief Order, seeking only the Fall 2005 college

tuition and argues that she did not know about the Default Judgment.   The Court agrees that the

initial filing of the State Court Contempt Motion may constitute a violation of the automatic stay.

However, because Webb acted quickly to obtain relief from the stay to proceed in state court and

because the Family Court Commissioner continued that matter until Webb had received the

appropriate relief from the bankruptcy court,  Debtor suffered little or no damages, and thus

contempt is not an appropriate remedy.  *See In re Houchens*, 85 B.R. 152

(Bankr.N.D.Fla.1988)(Court found that, although there was technically a violation of the

automatic stay, because the violation was unintentional and immediately corrected, holding the

creditor in contempt was an inappropriate remedy).  Debtor must agree as he initiated an

adversary proceeding against Webb seeking damages for an alleged violation of the automatic

stay, but subsequently dismissed that complaint.

Debtor's argument that Webb continued to violate the stay after the Default Judgment

-15-

was entered on September 30, 2005 is particularly perplexing because he, for reasons unknown

to the Court, failed to bring the existence of the Default Judgment to the attention of Webb or the

state court.  Debtor had a judgment, in his favor, which decided the precise issue that was before

the state court, but decided to keep it in his pocket until a later date.   Where the automatic stay

has been violated, the debtor has a duty to mitigate the damages. *See Houchens*, 85 B.R. at 154;

*see also Eskanos & Adler, P.C. (In re Roman)*, 283 B.R. 1, 12 (9th Cir. B.A.P. 2002) ("there is

also a consensus in the case law that, in determining reasonable damages under § 362(h), the

bankruptcy court must examine whether the debtor could have mitigated the damages.").

Debtor had multiple opportunities to present the Default Judgment to Webb and the

Family Court Commissioner, who would likely have determined that any further proceedings in

the state court on the issue of college tuition as child support violated the automatic stay, thereby

mitigating his damages, but he chose not to.  He could have mitigated his damages by divulging

the Default Judgment numerous times, including: in his affidavit to his Motion to Continue the

state court hearing filed on November 7, 2005; at the telephone conference held on November

17, 2005; in his Answer to the Amended State Court Contempt Action filed on November 21,

2005; at the hearing held on the Amended State Court Contempt Action on November 22, 2005;

or when Webb's attorney forwarded a draft of the state court judgment for review and input on

or about November 30, 2005.  Rather, Debtor decided to lie in wait until he received his Order of

Discharge and then use it to quash Webb's attempts to enforce his obligation to pay post-petition

college tuition and hold her in contempt for violating a judgment that she had never seen.  Based

on Debtor's failure to mitigate his damages, Webb's immediate attempt to rectify her initial

violation of the automatic stay and Webb's reasonable belief that she was abiding by the Partial

Relief Order by proceeding on the Fall 2005 and the Spring 2006 college tuition, the Court finds

that Webb did not willfully violate the automatic stay and that sanctions are not warranted.

## 2. Violation of the Discharge Injunction

The Court entered the Order of Discharge pursuant to § 524(a)(2) on January 10, 2006.

Section 524(a)(2) states:

> (a) A discharge in a case under this title-

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2).

The automatic stay imposed by § 362 expires upon the entry of an order of discharge but

is replaced by § 524(a)(2) which effectuates a permanent injunction against enforcement of

discharged debts.  Section 524 contains no provision comparable to that in § 362(h) which

authorizes an award of damages to a debtor for a willful violation of the automatic stay.

Nonetheless, willful violations of the discharge injunction are punishable by contempt.  *In re*

*Perviz*, 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003); *In re Goodfellow*, 298 B.R. 358, 361

(Bankr. N.D. Iowa 2003).  The standard of willfulness, similar to that set forth in § 362(h),

requires evidence the offending creditor knew of the existence of the discharge order and

intentionally took actions which violated its provisions.  *Perviz*, 302 B.R. at 370.  Knowledge of

the order and willful violation must be established by clear and convincing evidence.

*Goodfellow*, 298 B.R. at 362; *Koehler v. Grant*, 213 B.R. 567, 570 (B.A.P. 8th Cir. 1997).  A

creditor found in contempt for having willfully violated the discharge injunction is subject to an

award of actual damages including attorneys fees.  *Perviz*, 302 B.R. at 370; *Goodfellow*, 298

B.R. at 362.  In fashioning an award or remedy for contempt of court resulting from a violation

of the discharge injunction, the court should consider the dual purposes of contempt sanctions

which are to compensate for actual losses and coerce compliance with the court's order.  *Egbarin*

*v. Connecticut Diagnostics, L.L.C. (In re Egbarin)*, 286 B.R. 45, 47-48 (Bankr. D. Conn. 2002).

The movant must also demonstrate that the offending creditor's conduct relates to a debt that is

encompassed by the discharge order, in other words, that it is a dischargeable debt.  *In re Dunn*,

324 B.R. 175, 180 (D. Mass. 2005).

     Debtor contends that this Court should find Webb's actions, in pursuing her contempt

motions in the state court, violations of the Order of Discharge, declare any resultant orders void,

award him damages for violation of the discharge injunction and enjoin further prosecution of

obligations arising out of the Dissolution Judgment.  Debtor argues that Webb violated the

discharge injunction, and should thus be held in contempt by: (1) obtaining service on Debtor for

the Third Motion for Contempt by special process server on January 18, 2006; (2) the Court

setting a show cause  hearing on the Third Motion for Contempt for January 24, 2006 (a hearing

which was continued at Debtor's request); and (3) the Court setting a hearing regarding Debtor's

request for a re-hearing on the judgment entered by the state court on the Amended State Court

Contempt Action and his Motion to Dismiss for Bankruptcy Discharge.

     Webb admits that she received correspondence from Debtor dated January 17, 2006,

wherein the Order of Discharge was referenced.  The only action taken by Webb, subsequent to

entry of the Order of Discharge, to enforce a claim, arguably subject to that order, was serving

process on Debtor on January 18, 2006, for a hearing on Webb's Third Motion for Contempt.

-18-

The evidence is unclear as to whether prior to January 18, 2006, Webb's counsel had received the January 17 correspondence making reference to the Order of Discharge. Accordingly, Debtor has failed to demonstrate by clear and convincing evidence that at the time Webb took this action to prosecute her Third Motion for Contempt, she had actual knowledge of the entry of the Order of Discharge. In addition, as indicated above, in order to establish a willful violation of the Order of Discharge, Debtor must establish that the claim which Webb prosecuted subsequent to the entry of that order was in fact encompassed by its scope. Accordingly, it would be incumbent upon Debtor to prove that the claim for college tuition expenses was not nondischargeable under § 523(a)(5). The judgment which previously established that fact by default is now being vacated. That issue will now be litigated in the adversary proceeding. Not only has the Debtor not offered any evidence on these motions to permit the Court to find that the debt was dischargeable but, as the Court observed above, there is, in this record, some evidence that Webb may have a meritorious defense to that claim. Unlike other situations where a creditor simply ignores a discharge order or is just mistaken regarding its effect, here Webb was unaware of the potential problem with the state court judgment primarily because Debtor failed to disclose that he had the Default Judgment despite the multiple opportunities that he had to do so. Had he simply provided a copy of the Default Judgment to Webb or the state court, prior to the entry of the Order of Discharge, she would have known not to proceed with the Third Motion for Contempt without first seeking permission from the bankruptcy court.

Even if the Court were to conclude that she *should have been aware* of the Default Judgment and that it rendered college tuition dischargeable, there is little or no evidence that Webb actually attempted to collect on the debt after the discharge injunction was implicated or

-19-

that Debtor was prejudiced in any way by her actions.  At trial, Sleeth testified that Debtor only appeared at the January 24th state court hearing and that the subject of that hearing was Debtor's Motion to Dismiss for Bankruptcy Discharge and Motion to Vacate the judgment entered in the Amended State Court Contempt Action, not the Third Motion for Contempt.  Sleeth also testified that, since the entry of the Order of Discharge, aside from obtaining personal service on Debtor for the Third Motion for Contempt, no actions were taken on behalf of Webb to collect on a debt from Debtor.  Because the Court is conditioning this order to forbid any further proceedings in state court on the issue of college tuition as child support until a final order is entered by this Court, there is no pending contempt action against Debtor. Furthermore, because the state court has granted Debtor's request for a re-hearing on the Amended State Court Contempt Action, there is no judgment for contempt outstanding against Debtor and thus no prejudice to Debtor.

As for Debtor's request that this Court enjoin the further prosecution of claims under the Dissolution Judgment in the state court, that matter will take care of itself as the adversary proceeding is resolved.  The Court has conditioned its order granting the Motion to Set Aside Default Judgment on there being no further prosecution of those claims in the state court pending a final order on the complaint.  If this Court should determine that the claims embodied in the Dissolution Judgment, which Webb seeks to enforce, are dischargeable, they will for that reason then be automatically encompassed by the discharge injunction already issued and governed by the provisions of § 524(a)(2).  If, on the other hand, the Court determines that those claims are nondischargeable, then no injunction of the kind Debtor requests would be appropriate as those claims would be excepted from the operation of the Order of Discharge and injunction.

### III.  CONCLUSION AND ORDER

For all the reasons cited above, Debtor's Motion for Contempt and Sanctions is denied

and Webb's Motion to Vacate Default Judgment is granted.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.


Dated:   _____June 23, 2006_____        _____/s/ Dennis R. Dow_____
                                          THE HONORABLE DENNIS R. DOW
                                          UNITED STATES BANKRUPTCY JUDGE